Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

---

CLEMENT, State Com'r of Excise, v. EMPIRE STATE SURETY CO. et al.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

1. INTOXICATING LIQUORS—BONDS OF DEALERS—DISCHARGE OF SURETIES—
   AGREEMENT—EVIDENCE.
   In an action by the State Commissioner of Excise against the principal and surety upon a liquor tax bond in which the surety alone defended, evidence examined, and *held* not to establish an agreement between the commissioner and the surety, which extinguished the latter's liability upon the bond in suit; or, even if there was such an agreement, that there was any consideration to support it.

2. SAME.
   Under the Liquor Tax Law, Laws 1896, p. 61, c. 112, § 18, as amended by Laws 1897, p. 221, c. 312, § 11, providing that certain liquor dealers

shall file with the State Commissioner of Excise a bond to the people of the state of New York in a specified amount, conditioned that such dealers will not permit certain conduct, the commissioner is authorized to maintain an action in his name to enforce the payment of a penalty for a breach of the condition, and section 10 of such law gives him the power to employ counsel to that end, and so it becomes his duty to determine whether sufficient grounds exist for such an action, and he therefore has the authority to determine whether after an action has been commenced it shall be prosecuted or discontinued, but he has not the right to change the conditions of the bond which are fixed by the express provisions of the statute, and consequently he was without authority to make an agreement with the surety on such a bond, after its violation, by which such surety might relieve himself of liability on such bond by paying the penalties for violations of other such bonds upon which he was also surety; neither the commissioner nor the courts having any power whatsoever to lessen the penalty prescribed to secure an observance of the law.

**3. SAME—ACTIONS FOR BREACH.**

While the State Commissioner of Excise may determine at a given time whether sufficient grounds exist to warrant prosecuting an action upon a liquor tax bond, that determination is not absolute, so as to bind either himself or his successor in office not to commence an action upon such bond in the future, and, if he afterwards discovers that a violation of the bond can be established, it then becomes his duty to prosecute an action for such violation, and recover the penalty therefor.

**4. SAME—AMOUNT RECOVERABLE.**

The statute does not contemplate a reduction in the amount of the penalty in a liquor tax bond based upon doubtful liability or chances of success in maintaining an action for the breach; for, if the conditions of the bond have been broken, the amount of recovery is fixed and absolute, if not, there is nothing due.

Appeal from Special Term, Niagara County.

Action by Maynard N. Clement, State Commissioner of Excise of the state of New York, against the Empire State Surety Company and another. From a judgment dismissing the complaint as to the Empire State Surety Company, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Royal R. Scott, for appellant.

Hugo Hirsh, for respondents.

KRUSE, J. This action is upon a liquor tax bond. The surety alone defends. At the close of the evidence both parties moved for the direction of a verdict, and a verdict was directed for the defendant.

The evidence is undisputed that the certificate holder for whom the bond was given violated Liquor Tax Law, Laws 1896, p. 45, c. 112, as amended by Laws 1897, p. 207, c. 312. The defendant surety company contended, however, and so alleges in its answer, that the plaintiff's predecessor in office agreed with the defendant surety company that in consideration of said defendant refraining from interposing defenses in certain actions then pending against said defendant, upon bonds similar in character to the bond in suit, in which the principal defendant, the liquor tax certificate holder, did not appear and interpose a defense, or was not served with a summons, and the payment by said defendant surety company of the judgment entered in such suits, no

other or further actions would be commenced or prosecuted against the defendant surety company upon bonds of violations of the liquor tax law occurring prior to that time, and agreed to and did release the defendant surety company of and from all claim, liability, and demands under said bonds for such alleged violations. The answer further alleges that the defendant performed said agreement upon its part, and that the alleged violations mentioned in the complaint occurred prior to the time of making said agreement, and that the defendant had been released and discharged from all liability thereon. The bond in suit took effect May 1, 1902, and covered the year ending April 30, 1903. The violation occurred on May 25, 1902. Conversations were had between the State Excise Commissioner and representatives of the surety company, and letters passed between them in the latter part of the year 1905 and the early part of the year 1906, which, it is contended upon the part of the surety company, establish such an agreement. Mr. Cullinan, the commissioner with whom the negotiations were had, went out of office in May, 1906, and was succeeded by the present commissioner. Mr. Cullinan was called as a witness for the defendant. The learned trial court in disposing of the case stated that entire credence was given to his testimony, and directed a verdict for the defendant. We take the same view of the testimony, but reach a different conclusion. Assuming that the commissioner had authority to make the agreement with the surety company, and release it from its liability upon the bond in suit, we think the evidence falls short of establishing that agreement.

It is undoubtedly true that the surety company desired to know its entire liability upon all its liquor tax bonds. It was going out of business, and was negotiating to adjust its entire liability. It is equally clear that the commissioner was willing to ascertain and have paid the full amount for which the surety company was liable, and to that end he caused an investigation to be made by his attorneys and subordinates, to ascertain the extent of the violations of the conditions of the bonds made by the surety company. On January 2, 1906, Commissioner Cullinan wrote a letter to Mr. Hirsh, attorney for the surety company, inclosing a statement of the liability of the surety company on its liquor tax bonds, stating separately those upon which judgment had been entered, those in suit, and those not in suit. The total amount of the judgments and claims was $93,474.16, but the bond in suit was not included in the statement. The receipt of the letter and statement was acknowledged by Mr. Hirsh in his letter of January 3d to Mr. Cullinan. It seems that thereafter the proposition was submitted on behalf of the surety company to pay $51,105.99 in settlement of all claims of the people of the state against the surety company arising out of the liability incurred on liquor tax bonds. In his letter of January 19, 1906, to Mr. Hirsh, Mr. Cullinan, referring to that proposition, says that it does not meet his approval; that the claim made by the department against the company must be measured by its contractual liability which it assumed when it became surety upon the liquor tax bonds, and asked the company to govern itself accordingly, and address itself to the extinguishing of the claims that the department has against it.

In this connection, it may be well to refer to the testimony of Mr. Cullinan. He testifies that in May, 1905, Mr. Hirsh called upon him, stating that the surety company desired to go out of the business of bonding liquor dealers, and wanted to know what the liability of the company was, and that he (Mr. Cullinan) stated in reply that he would cause an examination to be made of the records of the department of its liability; that he caused the investigation to be made, and the statement was based upon this investigation, and that those are the only claims he made as a result of that investigation. Upon being asked whether, if those claims were paid, the department would have any further claim against the company, Mr. Cullinan answered:

"There was that statement made by me with this qualification: That the claim made by the department was upon specific cases, that there were a large number of bonds in the office upon which the Empire State Surety Company was surety, which I thought were not enforceable, or the attorneys examining the papers, that they would have to run the chance.

"The Court: You mean the company? A. The company would have to run the chances as to an attempt to enforce the liability on these bonds after my term of office expired, but in my judgment that the claim that was presented to Senator Lexow comprised all of the liability of the Empire State Surety Company.

"Mr. Hirsh (resuming): Are you quite sure of that conversation? A. I am. I remember particularly, because Mr. Hirsh or Senator Lexow had asked me in behalf of the department to execute a general release to the Empire State Surety Company. Mr. Hirsh asked me if I would take a lump sum in final settlement of all the claims, and I declined to do it. I stated that I could not take a lump sum, because I considered that the company's liability was of a contractual character, and that the statute did not permit any compromise. Mr. Hirsh asked me if I would refer the matter to the Attorney General to determine whether or not I could accept a lump sum in final settlement of all the claims, and I declined to do it."

He further testified that he made the remark to either Hirsh or Lexow that he regarded a bond like a piece of commercial paper in a bank, that whatever it called for it had to be paid before the claim could be extinguished; that the settlement covered only specific cases, and as to the other cases, where the company was a surety, they must take their chances; that he only attempted to settle and collect the claims referred to in the schedule; that he did not ask or want them to pay anything more than was due and owing by the company; that he made his claim on all the bonds that he thought the company was liable on, but told the representatives of the company that his successor might take a different view as to the other bonds; that he presented the claim of their liability as he understood it, and was advised. Mr. Cullinan further testified that there was something said of a general character that the company would not defend a suit if the principal did not defend; but it seems that that was always the course pursued by the surety company in suits upon bonds of this character given by it. That there was no such absolute agreement as is contended for on behalf of the surety company is further apparent from the fact that more than six months after it is claimed such an agreement was made the attorneys for the surety company in their letter of September 15, 1906, to the state excise department make no such claim. In referring in that letter to one of the bonds which had been sued, they say that, inasmuch as the principal defendants have defaulted, they do not see that there

is anything to try, and ask whether or not the face of the judgments, without further costs, will be received in full settlement of the actions, adding, "This is the arrangement that we have had with your department in all cases in New York City, and assume that the arrangement can be continued"—to which the deputy commissioner replied that the face of the judgments, with interest from the date of entry, would be expected. We may reasonably assume that the surety company was indemnified by the principal, and, upon judgment being obtained against the principal, had recourse to such indemnity.

We think the surety company failed in its defense; that the evi-. dence does not establish either that there was a contract made between the commissioner and the surety company which extinguished its liability upon the bond in suit, or, even if there was such an agreement, there was no consideration to support it. The evidence is not very clear that the surety company even paid the amount claimed; but assuming that it paid the full amount, it paid no more than it was legally liable to pay, and parted with nothing to extinguish its liability upon the bond in suit. While the surety company desired to ascertain its full liability, and the commissioner endeavored to ascertain it, and very likely both parties believed that all of the bonds upon which there was any liability were included in the amount, the fact remains that the bond in suit was not included, and that its conditions had been broken, making the defendant liable for the full amount thereof, which it has never paid.

2. Furthermore, we are of the opinion that the State Commissioner of Excise was without authority to make such an agreement. No such authority is expressly conferred upon him by the liquor tax law, nor by any other statute to which our attention has been called or of which we are aware. If it exists at all, it must be by implication. The bond is to the people of the state of New York. The State Commissioner of Excise is the custodian of it. He is authorized to maintain an action in his name, as commissioner, to enforce the payment of the penalty for a breach of its conditions, and required to pay over the moneys collected to the State Treasurer. Liquor Tax Law, § 18. To that end he may employ counsel and attorneys to bring the action. Liquor Tax Law, § 10. Having the power to maintain the action, the duty necessarily devolves upon him of determining whether sufficient grounds exist for such an action. That carries with it the authority of determining whether, after an action has been commenced, it shall be prosecuted or discontinued; but it gives him no right to change the conditions of the bond, since that is fixed by the express provisions of the statute. The primary object of the bond is to secure an observance of the law, and the penalty named is what the state exacts for a failure to comply with the conditions under which the right to traffic in liquor has been given. The amount thereof is fixed by statute, which neither. the courts nor the State Commissioner of Excise may lessen. Lyman v. Berlmutter, 166 N. Y. 410–413, 60 N. E. 21. While the State Commissioner of Excise may determine at a given time whether sufficient grounds exist to warrant prosecuting an action upon the bond, that determination is not absolute, so as to bind either himself or his successor in office not to commence an action upon such a bond in the future.

His duty in that respect is somewhat like that of the Attorney General in passing upon an application to bring an action to oust an alleged intruder from a public office, and it has been held that the determination of the Attorney General refusing to bring such an action is not binding upon his successor in office. People v. McClellan, 118 App. Div. 177, 103 N. Y. Supp. 146, affirmed in 188 N. Y. 618, 81 N. E. 1171. The State Commissioner of Excise must necessarily act upon the information which he then has. He may reach the conclusion therefrom that the evidence is insufficient to warrant bringing the action, when, in fact, the law has been violated, and, if he afterward discovers that fact and is satisfied that such violation can be established, it then becomes his duty to prosecute the action for a breach of the conditions of the bond, and recover the penalty therefor. The statute does not contemplate a reduction in the amount of the penalty, based upon doubtful liability or chances of success in maintaining the action. If the conditions of the bond have been broken, the amount of the recovery is fixed and absolute. If not, there is nothing due. In no view of the case, did the defendant make out a defense, and the verdict should have been directed for the plaintiff.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.